UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JACOB L. MOSS,                        )
                                      )
    *Plaintiff*,                     )
                                      )
v.                                    )    No. 2:18-CV-00056-SKL
                                      )
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
    *Defendant*.                     )

## MEMORANDUM AND ORDER

Plaintiff Jacob L. Moss ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Each party has moved for judgment [Docs. 13 & 15] and filed supporting briefs [Docs. 14 & 16]. This matter is now ripe. For the reasons stated below: (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 15] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

I.    **ADMINISTRATIVE PROCEEDINGS**

According to the administrative record [Doc. 8 ("Tr.")], Plaintiff filed his application for DIB on July 11, 2016, alleging disability beginning September 10, 2011. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on June 26, 2017. A supplemental hearing was held on September 20, 2017. On November 7, 2017, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date through

the date of the decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born July 27, 1987, making him a younger person as defined by the relevant Social Security Administration ("SSA") regulation, at all relevant times. 20 C.F.R. § 404.1563(c). He has an associate's degree in criminal justice, and is able to communicate in English. He has past relevant work as a sales clerk.

### B. Medical Records

In his July 2016 Disability Report, Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD"), anxiety, traumatic brain injury, arthritis in back, and history of ACL repair (Tr. 241). While there is no need to summarize the medical records herein, the relevant records have been reviewed and will be discussed as necessary below.

### C. Hearing Testimony

At the hearing before the ALJ on June 26, 2017, Plaintiff testified, after which the ALJ ordered Plaintiff to attend a psychological consultative exam and continued the hearing. At the second hearing held September 20, 2017, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by an attorney at both hearings. The Court has carefully reviewed the transcript of both hearings (Tr. 35-87).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The SSA determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

**B.     The ALJ's Findings**

The ALJ found Plaintiff last met the insured status requirements on December 31, 2016. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity between his alleged onset date and his date last insured. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative joint disease ("DJD") in the left wrist and both knees, osteoarthritis of the lumbar spine, mild degenerative disc disease ("DDD") of the cervical spine, cognitive disorder, anxiety, and PTSD. The ALJ also noted Plaintiff had a history of drug abuse, but found it did not result in any limitations and was therefore non-severe. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except Plaintiff was limited to frequent postural activities; he could never climb ladders, ropes, or scaffolds; he would need to "avoid concentrated exposure to noise, vibration, and hazards;" and he was limited to "simple unskilled work with infrequent changes in routine." (Tr. 19).

4

At step four, the ALJ found Plaintiff was incapable of performing his past relevant work. At step five, however, the ALJ found Plaintiff was capable of performing other work existing in significant numbers in Tennessee and in the national economy, including work as a janitor and as a cafeteria worker. These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date and the date Plaintiff was last insured.

## IV. ANALYSIS

Plaintiff asserts the ALJ's decision should be reversed and this matter remanded for further proceedings because the ALJ's assessment of his RFC is not supported by substantial evidence. He argues the ALJ erred in a number of ways, including by failing to assign weight to certain opinions from providers at the Mountain Home Veterans Administration Medical Center ("VA"), the ALJ erred by not ordering a physical consultative exam, and the ALJ did not properly consider relevant evidence concerning his psychological limitations, including Plaintiff's subjective reports concerning his symptoms. The Court will address each issue in turn.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Id.* (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*,

125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

B. **The ALJ's Physical RFC Assessment is Supported by Substantial Evidence.**

Plaintiff argues the ALJ's assessment of his physical RFC is not supported by substantial evidence "as it does not include all of the uncontradicted impairments" [Doc. 14 at Page ID # 1857]. He points out the ALJ did not specifically address certain notations in his VA records, contending this is error because the ALJ "must evaluate every medical opinion he receives," citing 20 C.F.R. § 404.1527(c) [*id.* at Page ID # 1858]. He also argues the ALJ erred by not ordering a physical consultative exam.

A claimant's RFC is the most they can do despite their impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

1. **The VA Opinions**

The ALJ discussed Plaintiff's medical records from the VA, and acknowledged the VA's determination that Plaintiff is 100% disabled (Tr. 20-21, 25). The ALJ gave this determination little weight, which Plaintiff does not challenge. Plaintiff does argue, however, that the ALJ committed harmful error by failing to specifically evaluate certain notations in Plaintiff's medical records from the VA. Plaintiff cites to two notes in VA disability benefits questionnaires: (1) a

7

note dated December 20, 2015, from Eleanor Snow, PA, indicating Plaintiff's "back condition" required him to "avoid heavy lifting and repetitive bending" (Tr. 1266, 1273); and (2) a note dated January 19, 2013, from John Fano-Schultze, PA, indicating Plaintiff's left wrist flexion and extension were 4/5 in terms of strength (Tr. 771, 792). Plaintiff also cites to a note dated May 16, 2014, from Celeste Peterson, D.O., stating, "wrist dysfunction-encouraged to continue wear brace [sic] when able" (Tr. 1381, 1384).

The notes from PA Snow and PA Fano-Schultze are not "medical opinions." *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements **from acceptable medical sources** that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." (emphasis added)); § 404.1513(a)(2) ("For claims filed . . . before March 27, 2017, see § 404.1527(a) for the definition of medical opinion."); *see also Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, (6th Cir. 2014) (explaining physicians' assistants are not acceptable medical sources (citation omitted)).[1] Accordingly, the ALJ was not necessarily required to evaluate their opinions pursuant to 20 C.F.R. § 404.1527(c), as Plaintiff contends. Rather, the regulation provides the ALJ "generally **should explain** the weight given to opinions from these sources or **otherwise ensure** that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, **when such opinions may have an effect on the outcome of the case**." *Id.* § 404.1527(f)(2) (emphasis

---

[1] The SSA has revised this rule for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Under the current regulation, which does not apply to Plaintiff's claim, a medical opinion can come from any "medical source." 20 C.F.R. § 404.1513(a)(2).

added); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (discussing Social Security Ruling ("SSR") 06-03p, which restates the requirements of 20 C.F.R. § 404.1527(c)); *Caldwell v. Colvin*, No. 3:12-0594, 2016 WL 5710903, at *9 (M.D. Tenn. Sept. 28, 2016) (finding an ALJ's failure to explain why certain limitations were not incorporated into RFC was harmless error because the opinion did "not include any limitations from an acceptable medical source").

The ALJ discussed the VA records concerning Plaintiff's back and wrist issues in detail, and the Court need not repeat that discussion verbatim herein. It suffices to note the following: the ALJ specifically mentioned PA Fano-Schultz's finding of 4/5 strength on Plaintiff's left wrist (Tr. 21). He also discussed the mild findings resulting from an x-ray on Plaintiff's lumbar spine, noting how Plaintiff was referred to physical therapy, which Plaintiff reported resulted in improvement. Plaintiff testified at the September 2017 supplemental hearing that he had not been to the VA for treatment since November 2016 (Tr. 46). As the ALJ explains, in August 2017, Plaintiff began receiving acupuncture treatment and was able to stop taking pain medication (Tr. 21). The ALJ also discussed other medical opinion evidence concerning Plaintiff's physical state; specifically, he rejected Dr. Ann Chang's opinion that Plaintiff was limited to lifting only up to 10 pounds, because Dr. Chang's opinion was given just after a car accident, and he credited the state agency non-examining physician's opinion that Plaintiff could perform a range of medium work, finding it was consistent with the medical evidence of record (Tr. 25). Accordingly, the Court finds the ALJ's discussion of the evidence allows the Court and Plaintiff to follow the ALJ's reasoning. Moreover, arguably the ALJ's limitation to medium work with only frequent postural, no climbing of ropes or scaffolds, and avoiding noise, vibration, and hazards, incorporates the

findings of PA Snow (avoid heavy lifting and repetitive bending) and PA Fano-Schultz (4/5 strength in wrist). Accordingly, the Court finds no harmful error in the ALJ's failure to specifically weigh these opinions.

The Court likewise finds no harmful error in the ALJ's failure to assign weight to Dr. Peterson's May 16, 2014, note: "wrist dysfunction-encouraged to wear brace when able." (Tr. 1381). Plaintiff seems to suggest this note is consistent with the opinion of the state agency non-examining medical consultant (Peter Arrowsmith, M.D.), that Plaintiff could engage in "feeling (skin receptors)" only frequently, and Plaintiff needs to avoid work that requires "sustained articulate or rapid speech." (Tr. 105).

Assuming Dr. Peterson's May 16, 2014, note constitutes a "medical opinion," the ALJ made findings completely consistent with it. The ALJ found Plaintiff had DJD in his left wrist and that it was a severe impairment, which covers the diagnosis of "wrist dysfunction." *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." (citation omitted)); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (A "mere diagnosis . . . says nothing about the severity of the condition."). Plaintiff fails to articulate how Dr. Peterson's note about a wrist brace constitutes a medical opinion or indicates a need for any greater restrictions than those found by the ALJ. Indeed, Dr. Peterson's "Assessment/Plan/Recommendations" section from the same appointment does not further mention Plaintiff's wrist as an ongoing concern. Furthermore, the encouragement to wear a wrist brace (or the wrist disfunction diagnosis) does not describe the extent of the wrist disfunction or the limits it places on Plaintiff's ability to work. Accordingly, even assuming Dr. Peterson is a treating physician whose opinion is entitled to deference, the

ALJ's failure to specifically discuss the note Plaintiff cites would be harmless error in this case. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (failure to address treating physician's opinion is harmless error "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," if the ALJ otherwise meets the goal of the treating physician rule, or if the opinion is "so patently deficient that the Commissioner could not possibly credit it").

As for Plaintiff's mention of Dr. Arrowsmith's opinion, it is unclear how the limitations for frequent (rather than continuous) "feeling" and avoiding rapid, articulate speech limitations relate to Dr. Peterson's note. The ALJ found these limitations were not consistent with the medical evidence of record, which Plaintiff does not challenge. If anything, Dr. Peterson's recommendation for a brace and the fact that Dr. Peterson did not include Plaintiff's wrist as an ongoing concern bolsters the ALJ's determination not to credit the "feeling" limitation. Accordingly, these limitations do not change the Court's analysis concerning Dr. Peterson's opinion.

For these reasons, the Court finds no harmful error in the ALJ's failure to discuss the "opinions" in Plaintiff's VA records from PA Snow, PA Fano-Schultze, or Dr. Peterson. This failure does not render the ALJ's physical RFC assessment unsupported by substantial evidence.

### 2. Physical Consultative Exam

Plaintiff also argues "a consultative physical examination with a residual functional capacity was essential for a full and fair resolution of the Plaintiff's claim." [Doc. 14 at Page ID # 1858]. He argues the VA records and Dr. Arrowsmith's opinion show "severe knee difficulties and hand difficulties," which support Plaintiff's contention that further limitations specifically for

lifting, bending, and using his hands should have been incorporated into Plaintiff's RFC [*id.* at Page ID # 1859].

Although an ALJ "has a basic obligation to develop a full and fair record," the ALJ "is not required to act as the claimant's counsel or produce evidence for the claimant." *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-CV-109, 2013 WL 4014715, at *13 (E.D. Tenn. Aug. 6, 2013) *(citing Born v. Sec'y of Health & Human Servs.,* 923 F.2d 1168, 1172 (6th Cir.1990); *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir.1986)). "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Brooks v. Astrue*, No. 3:09-CV-432, 2011 WL 652839, at *8 (E.D. Tenn. Jan. 26, 2011) (quoting *Foster*, 279 F.3d at 355 (internal quotation marks omitted)), report and recommendation adopted, No. 3:09-CV-432, 2011 WL 652837 (E.D. Tenn. Feb. 14, 2011). Further, because here Plaintiff was represented by counsel at the administrative level, "[t]he ALJ was entitled to assume that Plaintiff . . . was presenting [their] best evidence in favor of benefits." *Birdwell v. Barnhart*, No. 2:06-0063, 2008 WL 2414828, at *10 (M.D. Tenn. June 12, 2008) (citing *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 549 (6th Cir.2002); *Glen v. Sec'y of Health & Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)).

Even when Plaintiff's initial hearing was continued for the completion of a psychological consultative exam, Plaintiff did not request a physical consultative exam from the SSA, or arrange for one himself (Tr. 85). As the Commissioner argues, there was sufficient evidence in the record for the ALJ to properly evaluate Plaintiff's physical health issues, including Dr. Arrowsmith's opinion, Dr. Peterson's records, an April 2012 MRI on Plaintiff's wrist, and the records concerning Plaintiff's knee, all of which the ALJ discussed. The record "contain[s] a considerable amount of

12

evidence" pertaining to Plaintiff's ability to perform physical functions. *See Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013). As such, the Court concludes the ALJ did not err by declining to obtain a further physical consultative exam. Plaintiff's motion will be denied in this regard.

### C. The Psychological RFC Assessment is Supported by Substantial Evidence

Plaintiff similarly argues the ALJ's assessment of his RFC "from a psychological standpoint is also not supported by substantial evidence." [Doc. 14 at Page ID # 1859]. He briefly challenges the ALJ's consideration of the psychological consultative examiner's report, and again contends the ALJ overlooked "opinion evidence" in the VA file. He also argues the ALJ failed to properly evaluate his subjective symptoms and allegations.

#### 1. Psychological Consultative Exam Report

At the request of the ALJ, Steven Lawhon, Psy.D., performed a psychological consultative examination on Plaintiff on July 13, 2017. The ALJ discussed Dr. Lawhon's opinion as follows:

> On July 13, 2017, the claimant was referred to Dr. Steven Lawhon, psychological consultative examiner. The claimant admitted depression and occasional suicidal ideas but denied any current plan or intention. He recalled two presidents and completed serial seven's tasks. While the claimant could not perform common proverbs, he recalled two out of three objects suggesting mild impairment to short-term memory. Dr. Lawhon assessed that the claimant was functioning in the average range of intellect. During the evaluation, Dr. Lawhon stated that it was unclear if the claimant was experiencing psychotic symptoms. He noted that the claimant might be malingering. Dr. Lawhon stated that the claimant was rational and oriented in person, place, and situation. He diagnosed PTSD. He assessed that the claimant's ability to understand and remember was mildly limited; sustain concentration and persisten[ce] was moderately limited; social interaction was not significantly limited; and work adaptation was moderately limited (Exhibit 5F).

13

(Tr. 24). In weighing Dr. Lawhon's opinion, the ALJ wrote:

> Dr. Steven Lawhon, psychological consultative examiner, is given great weight. Dr. Lawhon assessed that the claimant has no more than moderate limitation in ability to sustain concentration and persistence, and adaptation (Exhibit 5F). This is consistent with the medical evidence of record and is supported by the medical signs and findings.

(Tr. 25).

As pertinent, Dr. Lawhon states in his opinion that the ALJ specifically requested the test "to address exaggeration or malingering." (Tr. 1719). Dr. Lawhon noted "there wasn't sufficient evidence to confirm malingering during the evaluation," and he recommended Plaintiff undergo additional psychological testing, for example the M-Fast test and the Personality Assessment Inventory ("PAI") test, which "includes a measure of malingering." (Tr. 1719). Plaintiff points out he did in fact take PAI tests in January 2012 and November 2016, which both showed he "answered in a reasonably forthright manner and did not attempt to present an unrealistic or inaccurate impression that was either more negative or more positive than the clinical picture would warrant." (Tr. 869, 1704). Plaintiff argues "those tests show he was not malingering and at the very least should have been shared with the consultative examiner to inform his opinion." [Doc. 14 at Page ID # 1859 (citation to Tr. omitted)].

Plaintiff's argument is not well-taken. As the Commissioner argues, Dr. Lawhon only recommended further testing "to address the ALJ's question of whether Plaintiff was a malingerer," not to complete his psychological RFC assessment [Doc. 16 at Page ID # 1878]. Dr. Lawhon's opinion makes clear that he was unable to "**confirm** malingering," meaning that while the ALJ raised the issue of malingering, Dr. Lawhon did not find Plaintiff was malingering (Tr. 1719 (emphasis added)). In other words, Dr. Lawhon credited Plaintiff's allegations and

14

accounting of his symptoms, found Plaintiff's test results were valid, and still determined Plaintiff was "not significantly limited" in his ability to interact socially, only mildly limited in his ability to understand and remember, and only moderately limited in his ability to sustain concentration, persistence and pace and adapt to a work environment (Tr. 1719). The fact that Dr. Lawhon did not have the test results from the VA clearly would not have made a difference. Although as discussed below, the ALJ ultimately found Plaintiff's description of his subjective symptoms was not entirely consistent with the record, this finding was not based on any medical opinion that Plaintiff was malingering during his psychological exam, which yielded nothing more than moderate functional limitations.

Plaintiff also very briefly argues the ALJ failed to mention the VA opinion evidence from July 2012 that Plaintiff's PTSD and cognitive disorder caused "reduced reliability and productivity in the sense that if he is not on medication, he does not focus and concentrate as well at school; this could translate into not performing well in a work environment as well because he would have trouble focusing and concentrating there as well." (Tr. 721). Without citing any authority, Plaintiff submits that a "limitation for simple, unskilled work with infrequent changes does not adequately address" all of Plaintiff's mental health limitations [Doc. 14 at Page ID # 1859-60 (citation to Tr. omitted)].

But this opinion does not explain the extent to which Plaintiff's troubles with focusing and concentrating would actually affect his ability to work. The ALJ found Plaintiff had moderate limitations in maintaining concentration, persistence or pace (Tr. 19), which is certainly consistent with the VA opinion, as well as the opinion of Dr. Lawhon (which the ALJ assigned great weight). The United States Court of Appeals for the Sixth Circuit has held that a limitation to "simple,

15

routine, and repetitive tasks adequately conveys [a claimant's] moderately-limited ability 'to maintain attention and concentration for extended periods,'" where the opinion evidence did not identify "any concrete functional limitations." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace."). Moreover, as the Commissioner points out and as the ALJ discussed, once Plaintiff started taking his medication, his condition improved to the point he was able to perform well in school and eventually graduate with an associate degree (Tr. 22, 73, 634). *See, e.g.*, *Baker v. Astrue*, 617 F. Supp. 2d 498, 505-06 (E.D. Ky. 2008) (improvement with medication not consistent with disability); *see also Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585-86 (6th Cir. 2010) ("Impairments that are controllable or amenable to treatment cannot support a finding of disability." (citations omitted)).

Accordingly, the Court finds no harmful error in the ALJ's failure to explicitly assign weight to the July 2012 VA opinion concerning Plaintiff's mental limitations. Plaintiff's motion will be denied in this regard.

### 2. Subjective Symptoms

In connection with the issues he raises about his mental RFC, Plaintiff also makes a conclusory argument that the ALJ erred by not fully crediting Plaintiff's allegations concerning his symptoms. Plaintiff writes: "It is submitted that the Plaintiff's limitations as a result of his traumatic brain injury, PTSD, knee and wrist difficulties are amply supported by the medical

evidence of record, and the ALJ erred in finding that the Plaintiff was not fully credible[2] in view of the evidence." [Doc. 14 at Page ID # 1860].

Social Security Ruling ("SSR") 16-3p provides guidance as to how the SSA evaluates a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. In this case, the ALJ found the evidence as a whole did not support of a finding of any limitations beyond simple, unskilled, medium work, with infrequent changes in routine, no more than frequent postural activities, no climbing ladders, ropes, or scaffolds, and avoiding concentrated exposure to noise, vibrations, and hazards (Tr. 19). An examination of the ALJ's decision shows that he set forth and discussed the relevant evidence in a sufficiently thorough manner.

The ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the medical evidence of record shows that the claimant is not currently receiving counseling. He testified that he is not taking his medication. The evidence shows that the claimant is receiving acupuncture. He reported to Michelle Bouton, Licensed Acupuncturist, during his treatments that he is hiking, which has helped with his recovery. While the claimant reported that he has

---

[2] Social Security Ruling ("SSR") 16-3p eliminated use of the term "credibility," effective March 2016, thereby superseding SSR 96-7p, which used the old terminology. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). It further clarified that subjective symptom evaluation is not an examination of a claimant's character. The ALJ analyzed Plaintiff's subjective symptom reports pursuant to SSR 16-3p (Tr. 16).

> difficulty with memory, concentration, and task completion, the medical evidence of record shows that the claimant received an Associate's Degree in Criminal Justice. He reported memory problems; however, he lives alone, drives, and handles finances without reminders. The objective evidence shows that the claimant's subjective memory problems do not appear to cause more than mild functional limitations. While he reported problems trusting people and anger issues, he reported that he has a support group, which includes his parents, brother, girlfriend, and a couple of close friends, with whom he spends his time.

(Tr. 24-25).

The ALJ did not mischaracterize or overstate Plaintiff's activities of daily living, and it was proper for the ALJ to consider daily activities as one factor in the evaluation of a claimant's subjecting complaints. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *see also* SSR 16-3p; 20 C.F.R. § 404.1529. It was also proper for the ALJ to consider that Plaintiff stopped taking his medication. *See* 20 C.F.R. § 404.1529(c)(3). Elsewhere in the decision, the ALJ discussed other evidence which did not support Plaintiff's disabling allegations, including mostly normal findings on an x-ray of Plaintiff's lumbar spine, his only slightly reduced grip strength, the fact that he was remodeling his house, and Dr. Arrowsmith's opinion that Plaintiff was capable of performing a range medium work.

Accordingly, the Court finds the ALJ properly evaluated Plaintiff's subjective complaints and alleged symptoms in a manner consisted with relevant SSA policies and regulations, including SSR 16-3p and 20 C.F.R. § 404.1529. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), and Plaintiff has failed to show any error in the ALJ's decision in this regard.

**D.     Step Five**

Plaintiff also briefly challenges the ALJ's step five determination that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including as a janitor and a cafeteria worker (Tr. 27).

It is undisputed that the Commissioner has the burden of proof at the fifth step of the sequential process used for determining whether a claimant is disabled. Specifically, the ALJ must "make a finding 'supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'" *Howard*, 276 F.3d at 238 (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Substantial evidence "may be produced through reliance on the testimony of a [VE] in response to a 'hypothetical' question," *id.* (citing *Varley*, 820 F.2d at 779), but only if the question considers the claimant's limitations. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Nevertheless, the "rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal quotation marks and citation omitted). It is "well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Helton v. Berryhill*, No. 7:18-cv-008-JMH, 2018 WL 5986747, at *6 (E.D. Ky. Nov. 14, 2018) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

As discussed above, Plaintiff has failed to show harmful error in the ALJ's RFC determination, and the Court finds it is supported by substantial evidence. The ALJ's step five

determination was based on the testimony of the VE in response to a hypothetical question which matched that same RFC determination (Tr. 27-28, 66). The step-five determination is therefore supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 13] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 15] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED**.

**SO ORDERED.**

**ENTER**:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE